## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br>DELAWARE VALLEY LIFT TRUCK, INC.<br>　　　Debtor. | 20-14408 (AMC)<br>Chapter 11 |

### UNITED STATES TRUSTEE'S MOTION FOR SANCTIONS PURSUANT TO FED. R. BANKR. P. 9011 AND 11 U.S.C. § 105(A)

Andrew R. Vara, United States trustee for Region Three, (U.S.T.), by counsel, moves this Court to award sanctions against Paul J. Winterhalter, Esq. (Winterhalter) under Rule 9011 and 11 U.S.C. § 105(a). In support of his motion, the U.S.T. states:

### JURISDICTION

1. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and the Order of Reference of the United States District Court for the Eastern District of Pennsylvania dated July 25, 1984. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2). Venue of this proceeding is proper under 28 U.S.C. §§ 1408 and 1409.

### FACTS

2. The U.S.T. incorporates the facts of this Court's Opinion dated December 17, 2020 and avers the following.

3. On November 10, 2020, (Petition Date), Delaware Valley Lift Truck, Inc., (DVLT) commenced a voluntary bankruptcy under chapter 11 of the Bankruptcy Code.

4. DVLT was represented by Winterhalter who prepared, signed and filed the Debtor's Petition as counsel and who further sought approval from this Court for retention as counsel for the Debtor in its bankruptcy proceedings.

5. John (Jack) Meyer executed the bankruptcy Petition on behalf of DVLT and attested that the information contained in the Petition and Schedules was true and correct.

6. At the time of filing for relief, Jack Meyer owned fifty percent of the stock of DVLT and his brother, James Meyer, owned the remaining fifty percent of the shares of DVLT.

7. Since March of 2018, the Debtor, and brothers Jack and James Meyer, (and others) were engaged in litigation in the United States District Court for Eastern District of Pennsylvania relating to, among other things, claims against one another, and dissolution/sale of the Debtor's business.

8. Prior to the Petition Date, Debtor and Jack Meyer had an ongoing professional relationship with the law firm of Offit Kurman.

9. Winterhalter is an attorney and a principal of the Offit Kurman law firm.

10. Prior to the Petition Date, on or about October 26, 2020, a Notice of Special Meeting of Board of Directors and Notice of Shareholders Meeting was issued and transmitted by Winterhalter on behalf of DVLT.

11. James Meyer, through his attorney, raised objections to such meetings being held.

12. Thereafter, attorneys for James Meyer reached out to Winterhalter to see if a resolution could be reached between the adversarial parties, particularly between brothers James and Jack Meyer.

13. In response, Winterhalter then noticed a Microsoft Teams meeting, the purpose of which purported to be the Negotiation, Evaluation of Sale of Business and Global Settlement.

14. The aforesaid Microsoft Teams meeting was conducted on November 6, 2020, in which Winterhalter observed and participated thereby acquiring knowledge of what took place during the course of the meeting.

15. At the time of the aforementioned Microsoft Teams meeting, settlement proposals were put forth by representatives of James Meyer, to which Winterhalter responded to the effect that he would discuss the proposals with his client(s) and get back to the attorney for James Meyer, whereupon James Meyer and his representatives left the meeting.

16. No Directors or Shareholders meeting ever took place, and no vote was taken to file bankruptcy. (Court's finding in its Opinion of December 17, 2020.)

17. Winterhalter prepared (and subsequently filed with this Court) a purported Resolution of Directors of DVLT authorizing the filing of this bankruptcy. (at Docket #2)

18. On December 16 and 17, 2020, the Court conducted a hearing on James Meyer's Motion to Dismiss the subject bankruptcy.

19. In the course of the aforesaid hearing on the Motion to Dismiss, Jack Meyer testified when asked, that it was Winterhalter's idea to file for bankruptcy.

20. At the conclusion of the hearing of the aforesaid Motion to Dismiss on December 17, 2020, this Court held that this bankruptcy was filed without corporate authority and in "bad faith" finding in pertinent part:

> " . . .and the Court finds that #1) there was no properly noticed shareholder or board of director meeting."
>
> "So there was no board of directors meeting, there was no shareholder meeting, there was no vote, and it appears to the Court that Jack and John were lying when they said that there was some meeting afterwards where a vote was taken. I don't think that ever happened. I think after the parties left, Mr. Mitchell and Jim Meyer and Mr. Green, after they left, that was that. And then they had to recreate events in order to justify this bankruptcy filing."

"The filing of this bankruptcy to conduct a sale to stop the litigation and to stop Jim from . . . complaining about the payment of his shares to his parents."

"I can only conclude, based upon all the evidence, testimony that I've seen today, that the sale was cooked up by Jack in order to try to stop the Eastern District of PA litigation."

" . . . based upon everything I've seen, I believe that Jack thought that by filing a bankruptcy petition in favor of DVLT, that that would stop the litigation against all the defendants."

"Further, based upon the ridiculous expeditious filing of the motion to sell, I further find that not only did they want to stop that litigation from going forward, but they also thought that by having the sale motion heard on an expeditious basis, that they would then come up with an offer that was far less than the true value of the company , so as to deprive Jim Meyer the benefit of his 50% share in the company. . ., . They simply were trying to stop the litigation, pay him off at a decreased amount, and just make everything go away."

"I also find that this filing was done in order to evade Court orders, namely to allow the District Court to proceed with its summary judgment hearing after Jim was to file his reply."

21. No appeal of this Court's decision has been filed and no motion for reconsideration of this Court's determination to dismiss this case has been filed, and the time to do either has now expired.

22. Further, in connection with this Court's dismissal of the instant case, this Court retained jurisdiction to hear any application for sanctions filed within thirty days of its December 17, 2020 Order of Dismissal.

## LEGAL ARGUMENT

23. Winterhalter's conduct in filing this Debtor's bankruptcy Petition merits sanctions under Fed. R. Bankr. P. 9011 and Section 105(a) of the Bankruptcy Code..

24. Rule 9011, which is modeled after Fed. R. Civ. P. 11, requires parties to certify that a petition, pleading or other document filed with the court "(a) is not being presented for an improper purpose; (b) the legal claims are warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law; and (c) the factual allegations have evidentiary support or, if specifically identified, are likely to have evidentiary support after discovery or further investigation." *In re Bagbag*, No. 08-12667, 2020 WL 1304146, at *3 (Bankr. S.D.N.Y. March 17, 2020) (citing Fed. R. Bankr. P. 9011). Accordingly, "all signatories to a bankruptcy petition, including Bankruptcy counsel and a debtor's officer or representative, subject themselves to Bankruptcy Rule 9011." *In re Coquico*, 508 B.R. 929, 940 (Bankr. E.D. Pa. 2014).

25. Rule 9011 violations are evaluated under an objective standard. Accordingly, the "empty-head pure-heart" or subjective good faith defense is unavailing. *See Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 157 (3d Cir. 1986) (citations omitted). "In applying this test, the bankruptcy court is not to use the benefit of hindsight but should test the signer's conduct by inquiring what was reasonable to believe at the time the [filing] was submitted." *Mapother & Mapother, P.S.C. v. Cooper (In re Downs),* 103 F.3d 472, 481 (6th Cir. 1996) (citation omitted).

26. Prior to filing, a party seeking sanctions under Rule 9011 is required to abide by a safe-harbor provision that allows the offending party an opportunity to make corrective measures. *See In re Miller*, 730 F.3d 198, 203-04 (3d Cir. 2013). However, Rule 9011's safe harbor provision is inapplicable "if the challenged paper is a bankruptcy petition, because "[t]he filing of a petition [often] has immediate serious consequences." *In re Chapman*, No. 19-26731, 2020 WL 1212773, at *3 (Bankr. E.D.Wisc. March 11, 2020); *see also* Fed. R. Bankr. P. 9011(c)(1)(A); *In re Antonelli*, No. 11–20255, 2012 WL 280722, at *8 (Bankr. D.N.J. Jan. 30, 2012).

27. This case was not filed with a valid purpose of utilizing the bankruptcy process to reorganize the debtor's finances. *See In re Meltzer*, 516 B.R. 504, 515-16 (Bankr. N.D.Ill. 2014) ("A petitioner has no valid bankruptcy purpose—and acts in bad faith—when his goal is to stall or disrupt litigation in another court.") (citations omitted). Winterhalter advised the Debtor pre-petition, participated in the purported Meetings of Shareholders and Directors to authorize the bankruptcy filing, and indeed, advised and orchestrated the subject filing. As this Court found, "this filing was done in order to evade Court orders, namely to allow the District Court to proceed with its summary judgment hearing after Jim was to file his reply." And this Court also found that this bankruptcy was filed not only to stop the District Court litigation from going forward, "but they also thought that by having the sale motion heard on an expeditious basis, that they would then come up with an offer that was far less than the true value of the company, so as to deprive Jim Meyer the benefit of his 50% share in the company.

28. Rule 9011(b)(3) "imposes a duty on [parties] to ensure, upon reasonable investigation, that the factual contentions they submit to the court have (or are likely to have) evidentiary support." *In re Thomas*, 612 B.R. 46, 61 (Bankr. E.D.Pa. 2020). False, misleading,

improper, or frivolous representations to the court is a violation of Rule 9011. *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008).

29. In evaluating a Rule 9011(b)(3) violation, courts "consider the reasonableness of the inquiry under all the material circumstances." *See In re Taylor*, 655 F.3d 274, 284 (3d Cir. 2011) (citations omitted).

30. In filing the subject bankruptcy Petition, Winterhalter represented that as attorney for the putative Debtor, that he "conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive." *See Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 542 (1991). These representations were false and misleading.

31. Consistent with this Court's findings, Winterhalter presented the Petition for improper purposes which he well knew having directed DVLT to, and orchestrated the filing of, the bankruptcy; hence sanctions under Rule 9011 are proper. *See In re KTMA Acquisition Corp.*, 153 B.R. 238, 268 (Bankr. D.Minn. 1993) ("A sanction must be imposed that sends a clear message that the violator's behavior will not be tolerated and must stop.") (citations omitted); *see also In re Cherokee Simeon Venture I, LLC*, No. 12-12913, 2013 WL 5984382, at *4 (Bankr. D.Del. Nov. 12, 2013).

32. Federal courts have both inherent and express authority to control practice before them. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). Bankruptcy courts derive inherent and express authority to regulate the behavior of counsel from Section 105(a). 11 U.S.C. 105(a) authorizes bankruptcy courts to "issue any order . . . necessary or appropriate to carry out the provisions" of Title 11 or to take any action or make any "determination necessary or appropriate

to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a).

33. "There can be little doubt that bankruptcy courts have the inherent power to sanction vexatious conduct presented before the court." *In re Rainbow Magazine, Inc*., 77 F.3d 278, 284 (9th Cir. 1996). The inherent power is recognized in the statutory grant Congress has provided the bankruptcy courts:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). By providing that bankruptcy courts could issue orders necessary "to prevent an abuse of process," Congress impliedly recognized that bankruptcy courts have the inherent power to sanction that *Chambers* recognized exists within Article III courts. *See also In re Courtesy Inns, Ltd. (Jones v. Bank of Santa Fe),* 40 F.3d 1084, 1089 (10th Cir.1994) ("We believe, and hold, that § 105 intended to imbue the bankruptcy courts with the inherent power recognized by the Supreme Court in *Chambers.*"); *In re Pace (Havelock v. Taxel),* 159 B.R. 890, 904 (9th Cir. BAP 1993) (holding that § 105 grants bankruptcy courts the ability to sanction egregious conduct), *aff'd in relevant part,* 67 F.3d 187 (9th Cir.1995). For example, *In re Addon Corp.,* 231 B.R. 385 (Bankr. N.D. Georgia 1999), the court imposed sanctions upon the shareholder and the attorney who signed the chapter 7 petition on debtor's behalf, wherein the court found that the petition was filed in bad faith as such petition was filed to protect the shareholder's possessory interest in rental property on which debtor's lease had terminated pre-

petition. Similarly, in another case, the court imposed sanctions on debtor and debtor's counsel on grounds that the Petition was filed for an improper purpose and unwarranted under existing law. *In re Collins,* 250 B.R. 645 (Bankr. N.D. Ill. 2000).

34. Upon a showing of bad faith, the Court may sanction a party through its inherent powers. *See In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 97 n. 3 (3d Cir. 2008) (citations omitted). A court may award sanctions against attorneys and litigants under section 105(a) "without regard to the signed document requirement of Rule 9011." *In re Miller*, 529 B.R. 73, 85 (Bankr. E.D.Pa. 2015) (citations omitted).

35. This Court found that the Debtor and its principal instituted this bankruptcy proceeding in bad faith to advance the interests of Jack Meyer, and disrupt the pending litigation with James Meyer. Winterhalter with full knowledge thereof presented and prosecuted the subject bankruptcy.

36. The actions of Winterhalter "crossed the line in this case between legitimate advocacy and the use of the bankruptcy system and judicial resources for an improper purpose." *In re Miller*, 529 B.R. at 86. Given Winterhalter's transgressions in this case, sanctions pursuant to section 105(a) are appropriate.

## CONCLUSION

WHEREFORE, the U.S.T. respectfully requests that the Court enter an order sanctioning Winterhalter pursuant to Rule 9011, and Section 105(a). Additionally, the U.S. T. seeks such other and further relief as the Court may deem appropriate and just.

                                    Respectfully Submitted,

                                    Andrew R. Vara,
                                    U.S. Trustee for Region Three

Dated: January 14, 2021                By:    */s/ George M. Conway*
                                    George M. Conway, Esq.
                                    Trial Attorney
                                    Office of the U.S. Trustee
                                    200 Chestnut Street, Suite 502
                                    Philadelphia, Pennsylvania 19106
                                    Telephone: (215) 597-4411
                                    george.m.conway@usdoj.gov