## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **In re:** | : | **CHAPTER 11** |
| | : | |
| **DELAWARE VALLEY** | : | **BANKRUPTCY NO. 20-14408(AMC)** |
| **LIFT TRUCK, INC.** | : | |
| | : | |
| **Debtor** | : | |
| | : | |

## MOTION OF JAMES E. MEYER FOR ENTRY OF A JUDGMENT ORDER IMPOSING SANCTIONS AGAINST (I) OFFIT KURMAN, P.C.; (II) PAUL J. WINTERHALTER, ESQUIRE; AND (III) JOHN W. MEYER

James E. Meyer ("Jim"), by and through his counsel, Karalis PC, hereby moves (the "Motion") this Honorable Court for entry of a Judgment Order imposing sanctions against (i) Offit Kurman, P.C. ("Offit"); (ii) Paul J. Winterhalter, Esquire ("Winterhalter"); and (iii) John W. Meyer ("Jack", and together with the Offit, and Winterhalter, the "Respondents"), and in support thereof, respectfully represents as follows:

### INTRODUCTION

1.      On November 23, 2020, Jim filed his Motion for entry of an Order dismissing the bankruptcy case of Delaware Valley Lift Truck, Inc. (the "Debtor" or "DVLT") (I) for Lack of Requisite Corporate Authority and/or (II) for Bad Faith and other Cause (the "Motion to Dismiss") [D.I. 50].[1]

2.      At a hearing held on November 24, 2020 in connection with the objections filed by both the United States Trustee for Region Three and Jim to the Debtor's Expedited Hearing Request (as hereinafter defined) on the Debtor's Bid Procedures Motion (as hereinafter defined),

---

[1] On November 23, 2020, Jim also filed his Motion for Entry of an Order (I) Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) and Fed. R. Bankr. P. 4001(a) and (II) Waiving the Fourteen Day Stay Provided by Fed. R. Bankr. P. 4001(a)(3) (the "Motion for Relief") [D.I. 53]. As a result of the Dismissal Order (as hereinafter defined), the Motion for Relief was moot.

this Court, *inter alia*, asked Debtor's counsel to investigate the allegations raised in the objection

filed by Jim to the Expedited Hearing Request ("Jim's Objection") and the Motion to Dismiss in

advance of the hearing scheduled thereon to determine whether the Debtor was authorized to file

its bankruptcy case and if the case was not properly authorized to dismiss it.  At the November 24,

2020 hearing, this Court stated to the Debtor's counsel as follows:

> You're an officer of the court and I know that you will be honest and forthcoming
> to me but I urge you between now and the hearings on those two motions to get to
> the bottom of those facts.  I don't want to be in a situation at those hearings where
> we're not all on the same page about whether the debtor was authorized to file this
> bankruptcy or was not.  You know what you need to do.  You've heard his
> allegations about whether this debtor was authorized to file.  You know, he's saying
> that meetings weren't held, you know.  I want you to get to the bottom of it.  And if
> you determine that this bankruptcy was not properly authorized, then please don't
> make me go through all the motions at a hearing.  I'm expecting you to get to the
> bottom of each of those allegations that Mr. Karalis made and if, in fact, this is not
> an authorized filing, I'm going to expect a dismissal, okay?  So assuming that you
> can get yourself comfortable with that and you can give me cold, hard evidence that
> in fact there was authorization and you understand what Mr. Karalis' argument was
> which is that we're not talking about a debtor who's insolvent -- if the debtor is not
> insolvent, you know, his position is that you must get the consent of all the
> shareholders which means his client Jim Meyer to consent to the bankruptcy filings,
> to any kind of a sale proceeding.  So I hope that you take those allegations seriously
> and, you know, will get to the bottom of it at those hearings.

The Transcript of Motion to Establish Bidding Procedure for Sale Before Honorable Ashely M.

Chan, United States Bankruptcy Judge is attached hereto as Exhibit "A" and made a part hereof.

    3.     After the conclusion of the hearings on the Motion to Dismiss held on December

16, 2020 and December 17, 2020, this Honorable Court specifically found *inter alia* as follows:

> ... and the Court finds that #1) there was no properly noticed shareholder or board
> of director meeting.

> I found the testimony of John and Jack Meyer to be self serving in this matter
> just to tell the Court that a vote was apparently later taken.  Their own witness
> contradicted that very finding, and he clearly said, you know, not only did nothing
> else happen, but everyone testified that there was no vote taken.

> So there was no board of directors meeting, there was no shareholder meeting, there
> was no vote, and it appears to the Court that Jack and John were lying when they
> said that there was some meeting afterwards where a vote was taken.  I don't think
> that ever happened.  I think after the parties left, Mr. Mitchell and Jim Meyer and

Mr. Green, after they left, that was that. And then they had to recreate events in order to justify this bankruptcy filing.

The filing of this bankruptcy to conduct a sale to stop the litigation and to stop Jim from ... complaining about the payment of his shares to his parents.

So I turn now to the factors under SGL to determine whether or not this Debtor filed in bad faith. I'm inclined to agree with Mr. Karalis that many of the factors in SGL are satisfied here today. Namely, this is clearly a two-party dispute between DVLT and Jim Meyer. Second, the Debtor admits that it is able to pay its debts as they become due and is solvent. Its own schedules show that there's $4 million of net equity, notwithstanding the self-serving testimony that we heard today by Jack Meyer as to trying to decrease the amount of equity. I think that the schedules are perfectly reliable. There's no reason to revisit that issue. There was no compelling reason to, and Mr. Jack Meyer was not credible in testifying to any kind of lesser amount of net equity in the company.

I can only conclude, based upon all the evidence, testimony that I've seen today, that the sale was cooked up by Jack in order to try to stop the Eastern District of PA litigation.

... based upon everything I've seen, I believe that Jack thought that by filing a bankruptcy petition in favor of DVLT, that that would stop the litigation against all the defendants.

Further, based upon the ridiculous expeditious filing of the motion to sell, I further find that not only did they want to stop that litigation from going forward, but they also thought that by having the sale motion heard on an expeditious basis, that they would then come up with an offer that was far less than the true value of the company, so as to deprive Jim Meyer the benefit of his 50% share in the company... They simply were trying to stop the litigation, pay him off at a decreased amount, and just make everything go away.

I also find that this filing was done in order to evade Court orders, namely to allow the District Court to proceed with its summary judgment hearing after Jim was to file his reply.

*See*, Exhibit "B", at pgs. 5-11. The Transcript of Video Conference Opinion of the Court is attached hereto as Exhibit "B" and made a part hereof.

4.      On December 17, 2020, this Honorable Court entered an Order dismissing the Debtor's bankruptcy case for lack of requisite corporate authority and because it was filed in bad faith (the "Dismissal Order") [D.I. 101].

5.    The Dismissal Order also stated that "Any party who wishes to file a motion for sanctions against any party or lawyer in connection with the filing of this case may do so within thirty (30) days from the date thereof." *See*, Dismissal Order, at ¶ 3.

6.    By way of this Motion, Jim moves for the entry of a Judgment Order imposing sanctions against the Respondents based on false and manufactured claims in an attempt to derail the District Court Litigation (as hereinafter defined) and avoid, among other things, certain filing deadlines and a trial.

7.    The Respondents' frivolous conduct in reaffirming the validity of false and manufactured claims in pleadings and testimony submitted to the Court is clearly sanctionable.

8.    The Respondents should be sanctioned under Section 105(a) of the Bankruptcy Code, 28 U.S.C. § 1927, the Court's inherent power, and Bankruptcy Rule 9011.

9.    Given the significant litigation fees and costs that Jim incurred in his efforts to expose the Respondents' abuse of process, misrepresentations and the eventual dismissal of the Debtor's bankruptcy case, the appropriate measure of sanctions is an amount equal to the reasonable attorneys' fees and costs incurred by Jim as set forth in this Motion.

## JURISDICTION

10.    This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334.

11.    This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), and (O).

12.    Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409

13.    The statutory predicates for the relief requested herein are 11 U.S.C. § 105(a), 28 U.S.C. § 1927, and Fed. R. Bankr. P. 9011.

## BACKGROUND

**A.** **Procedural Background.**

14.    On November 10, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11, subchapter V, of Title 11, United States Code (the "Bankruptcy Code").

15.    Prior to the Petition Date, the Debtor and Jack had a professional relationship with Offit.

16.    The Debtor was represented by Offit and Winterhalter who sought approval of this Court to be retained as counsel for the Debtor [D.I. 31].

17.    Winterhalter prepared, signed and filed the Debtor's bankruptcy petition as counsel for the Debtor [D.I. 1].

18.    Upon information and belief, Winterhalter is an attorney and principal of Offit.

19.    Jack signed the bankruptcy petition, the bankruptcy schedules and statement of financial affairs on behalf of the Debtor and attested that the information contained therein was true and correct [D.I. 1, 2, 42, 42-1,43, and 44].

20.    Jack signed a Resolution of the Directors of Delaware Valley Lift Truck, Inc. Authorizing the Filing of a Petition in Bankruptcy [D.I. 2].

21.    Since the Petition Date, the Debtor had remained in possession of its assets and has continued management of its business as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code until the Dismissal Order was entered.

22.    On November 13, 2020, even though the Debtor had not yet filed its Schedules or SOFA, the Debtor filed a Motion for Entry of an Order (A) Approving Bidding Procedures and Bidding Protections in connection with a proposed sale of the Debtor's Assets, (B) Approving the

Form and Manner of Notice, and (C) Granting Related Relief (the "Bid Procedures Motion") [D.I. 15].

23.    By the Bid Procedures Motion, the Debtor sought, *inter alia*, authority to sell substantially all of its assets to Best Line Leasing, Inc. on an expedited time table with the approval of the bid procedures before Thanksgiving and the approval of the sale on or before December 31, 2020.

24.    The Debtor elected not file a Notice of Motion, Response Deadline and Hearing Date in connection with the Bid Procedures Motion.  Instead, also on November 13, 2020, the Debtor filed a Motion Requesting an Expedited Hearing on the Bid Procedures Motion before Thanksgiving (the "Debtor's Expedited Hearing Request") [D.I. 16].

25.    On November 14, 2020, the United States Trustee for Region Three filed his objection to the Debtor's Expedited Hearing Request.

26.    On November 15, 2020, Jim filed his objection to the Debtor's Expedited Hearing Request which, *inter alia*, asserted that (i) the Debtor's bankruptcy case was filed without the requisite corporate authority, (ii) the bankruptcy case was filed in bad faith, and (iii) on or before November 23, 2020 Jim would file a motion to dismiss the bankruptcy case.

27.    On November 23, 2020, Jim filed the Motion to Dismiss and the Motion for Relief.

28.    At a hearing held on November 24, 2020 in connection with the Debtor's Expedited Hearing Request, this Court not only denied the Debtor's Expedited Hearing Request on the Bid Procedures Motion but also asked Winterhalter as set forth above, as an officer of the Court, to investigate the allegations made by Jim that the Debtor lacked the requisite corporate authority to file its bankruptcy case, and if Winterhalter determines that the Debtor's bankruptcy case was filed without the requisite corporate authority, it should be voluntarily dismissed.

**B.**    **The Motion to Dismiss.**

29.    Jim incorporates the Motion to Dismiss in support of this Motion.

30.    As set forth in the Motion to Dismiss, Jim requested that this Court dismiss the

Debtor's bankruptcy case because (i) it was not filed with the requisite corporate authority and (ii)

it was filed in bad faith.

31.    On December 7, 2020, the Debtor filed its Response in Opposition to the Motion

to Dismiss [D.I. 86].

32.    As set forth in great detail in the Motion to Dismiss and as found by this Court,

there was no corporate authority for the filing of the bankruptcy proceeding as "… there was notice

– there was no valid board of directors meeting, there was no shareholder meeting, so that meeting

was never held." *See*, Exhibit "B", at pg. 3.

33.    In addition, as set forth in the Motion to Dismiss and as found by this Court, the

Debtor's bankruptcy proceeding was clearly filed in bad faith as:

> Furthermore, going through the remaining factors in SGL, the Court finds that
> the Debtor had minimal unsecure debt; it was not delinquent on any of that
> debt. I also find that this filing was done in order to evade Court orders, namely
> to allow the District Court to proceed with its summary judgment hearing after
> Jim was to file his reply. There are obviously very few debts. You never see,
> you know, schedules like we saw in this case, right, where there's $5 million
> of assets and less than a million dollars of liabilities. You just -- you know,
> as a bankruptcy judge, I never see that. When you see that, you know, it's a
> clear sign that this Debtor is in fact solvent. It was done to stop the summary
> judgment hearing, not a foreclosure, necessarily. And the Debtor obviously
> had sufficient funds to continue operating. There was no pressure from any
> other creditors, it was just the movant's litigation against the Debtor. And I
> also find that this case was filed solely to create the automatic stay, perhaps
> with the mistake in understanding that it would stop the litigation against all
> the Defendants. So for all of these reasons, the Court finds that this case should
> be dismissed for bad faith.

*See*, Exhibit "B", at pg. 11.

## RELIEF REQUESTED

34.    Jim respectfully requests the entry of a Judgment Order against the Respondents, jointly and severally, awarding him his reasonable attorneys' fees and costs incurred:

(a)    to prepare, file and prosecute Jim's Objection opposing the Debtor's Expedited Hearing Request to consider the Bid Procedures Motion before Thanksgiving;

(b)    to prepare, file and prosecute the Motion to Dismiss;

(c)    to prepare, file and prosecute the instant Motion;

(d)    to affirm any Judgment Order entered by this Court in connection with this Motion on appeal, if applicable; and

(e)    to collect any Judgment Order entered by this Court against the Respondents, if applicable.

35.    Jim is entitled to such fees and costs in the form of sanctions against the Respondents under 11 U.S.C. § 105(a), 28 U.S.C. § 1927, the Court's inherent power and Fed. R. Bankr. P. 9011.

36.    The entry of said Judgement Order will not result in a profit or windfall for Jim but merely provides for the reimbursement of the fees and costs that he incurred to dismiss the Debtor's bankruptcy case.  Jim's request for the reimbursement of his fees and costs does not include damages for the delay caused to Jim by the improper filing of the Debtor's bankruptcy case.

37.    The fees and costs incurred by Jim to dismiss the Debtor's bankruptcy case were a direct consequence of the actions taken by the Respondents in filing the Debtor's bankruptcy case without the requisite corporate authority and in bad faith.

# ARGUMENT

## I.    Sanctions are Warranted against the Respondents, Jointly and Severally, Under 11 U.S.C. § 105(a).

38.    Section 105(a) of the Bankruptcy Code, 11 U.S.C. § 105(a), provides bankruptcy judges with broad power to implement the provisions of the Bankruptcy Code and to prevent abuse of the bankruptcy process. *See*, *In re Volpert,* 110 F.3d 494, 500 (7th Cir.1997); *Coquico, Inc.,* 508 B.R. 929, 940 (Bankr. E.D. Pa. 2014).

39.    Under Section 105(a), a Bankruptcy Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of Title 11. *See*, 11 U.S.C. § 105(a).

40.    Section 105(a) also permits a Bankruptcy Court, *sua sponte*, to "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." *See*, 11 U.S.C. § 105(a). *See also*, *In re Miller*, 529 B.R. 73, 85 (Bankr. E.D. Pa. 2015).

41.    In addition, Section 105(a) may be used "'to protect the integrity of the Bankruptcy Code as well as the judicial process.'" *See*, *In re Arkansas Communities, Inc.*, 827 F.2d 1219, 1222 (8th Cir.1987) (*quoting In re Silver,* 46 B.R. 772, 774 (D. Colo. 1985)).

42.    Finally, Section 105(a) enables a Bankruptcy Court to maintain control of [its] courtroom and administration of the dockets in cases before the Court. *See*, *Volpert,* 110 F.3d at 501; *Miller*, 529 B.R. at 85.

43.    When sufficient evidence exists to find an abuse of the judicial system, a Bankruptcy Court may award sanctions against both attorneys and litigants under Section 105(a), without regard to the signed document requirement or safe harbor provisions of Rule 9011. *See, e.g., In re Schemelia*, 607 B.R. 455, (Bankr. D.N.J. 2019); *In re Evergreen Sec., Ltd.*, 570 F.3d

1257, 1273, 1274 (11th Cir. 2009); *Miller*, 529 B.R. at 85; *In re Antonelli*, No. 11–20255/JHW,

2012 WL 280722, at *13 (Bankr. D.N.J. Jan. 30, 2012); *In re Bailey*, 321 B.R. 169, 178 (Bankr.

E.D. Pa.2005); *In re Collins*, 250 B.R. 645, 657–59 (Bankr. N.D. Ill. 2000); *In re Mergenthaler*,

144 B.R. 632, 635 (Bankr. E.D.N.Y. 1992) (*citing United States v. International Brotherhood of*

*Teamsters*, 948 F.2d 1338, 1345 (2d Cir.1991)).

44.    An explicit finding of bad faith or of willful misconduct is required to award

sanctions under Section 105. *See*, *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies,*

*Inc.*, 57 F.3d 1215, 1225 (3d Cir. 1995); *Bailey*, 321 B.R. at 178.  *See also*, *In re Dyer*, 322 F.3d

1178, 1196 (9th Cir. 2003); *Miller*, 529 B.R. at 85.

45.    Here, this Court has already found that the bankruptcy case was commenced in bad

faith by finding that:

> I found the testimony of John and Jack Meyer to be self serving in this
> matter just to tell the Court that a vote was apparently later taken. Their
> own witness contradicted that very finding, and he clearly said, you know,
> not only did nothing else happen, but everyone testified that there was
> no vote taken.  So I was very concerned about that conflicting
> testimony. So there was no board of directors meeting, there was no
> shareholder meeting, there was no vote, and it appears to the Court that
> Jack and John were lying when they said that there was some meeting
> afterwards where a vote was taken. I don't think that ever happened.
> I think after the parties left, Mr. Mitchell and Jim Meyer and Mr. Green,
> after they left, that was it.  And then they had to basically recreate events
> in order to justify this bankruptcy filing.

*See*, Exhibit "B", at pg. 6.

46.    In addition, this Court also found that:

> On numerous occasions DVLT explained that it needed to file
> bankruptcy in order to stop the growing legal fees incurred in connection
> with the District Court.  The Court was troubled today to hear that the
> legal fees of Jack Meyer are apparently being paid by the Debtor.  I'm
> not really sure how that is kosher at this point, but based upon the
> testimony that the Court's heard today, it appears that Jack Meyer
> doesn't really observe many corporate formalities and sort of thinks that
> DVLT's money is his money.  So even though he's a defendant in that

action and is being represented by Mr. Burnheim, he's allowing DVLT
to front all of his legal bills.

*See*, Exhibit "B", at pg. 7.

47.     There is simply no doubt as to Jack and the Debtor's improper use of the bankruptcy

process.

48.     Offit has represented the Debtor and Jack even before the litigation filed by Jim on

March 15, 2018 before the United States District Court for the Eastern District of Pennsylvania

styled, *James E. Meyer, plaintiff, v. Delaware Valley Lift Truck, Inc.; et. al., defendants,* (case no.

2:18-CV-01118-WB) (the "District Court Litigation").

49.     Offit and Winterhalter were well aware of the facts set forth in the District Court

Litigation when the bankruptcy case was filed as a result of their advice. In fact, they were retained

to file the bankruptcy case for the Debtor more than four (4) months prior to the actual Petition

Date. *See,* Offit Engagement Letter – Chapter 11 Bankruptcy dated July 7, 2020 attached as

Exhibit 1 to Winterhalter Verified Statement [D.I. 31-2].

50.     Winterhalter, in the Offit Engagement Letter dated July 7, 2020, states to Jack, *inter
alia,* that:

> (f)     "...**You have consulted with our Law Firm and requested we
> provide legal advice related to the need and benefit of filing a
> Chapter 11 Bankruptcy** <u>**for the purposes of avoiding
> unnecessary continued litigation expenses and effectuating a
> controlled sale of the business**</u> (emphasis added) ..." *See, Id.* at
> page 1 [D.I. 31-2].

> (g)     "A Meeting of the Directors and Shareholders of the Corporation
> had been properly called and a vote(d) taken authorizing the
> Corporation to proceed with this action." *See, Id.*

51.     In addition, all of the Respondents were well aware that (i) no proper notice of a

meeting of directors was issued, (ii) no proper notice of a meeting of shareholders was issued, (iii)

no meeting of directors was held, (iv) no meeting of shareholder was held, and (v) no vote was

ever taken to authorize the filing of the Debtor's bankruptcy case. This Court was able to see through the perjury and false pleadings to make this determination. *See*, Exhibit "B", at pg. 6.

52.    The Respondents' conduct amounts to an intentional abuse of the bankruptcy process and was intentionally undertaken in bad faith in an effort to stay and ultimately end the District Court Litigation. Under these circumstances, sanctions are warranted under section 105(a) and should be imposed, jointly and severally, against the Respondents.

**II.    Sanctions are Warranted against the Respondents, Jointly and Severally, Pursuant to the Court's Inherent Power to Sanction Parties who Appear before It.**

53.    The United States Supreme Court has long recognized the inherent power of a federal court to "assess attorney's fees when a party 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons'." *See*, *Chambers v. Nasco, Inc.,* 501 U.S. 32, 45–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (*quoting Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)).

54.    "[I]f a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorney's fees against the responsible party." *See*, *Chambers,* 501 U.S. at 45–46, 111 S.Ct. 2123 (*quoting Universal Oil Products Co. v. Root Refining Co.,* 328 U.S. 575, 580, 66 S.Ct. 1176, 90 L.Ed. 1447 (1946)).

55.    As with section 105(a), sanctions may be imposed under the court's inherent power despite the absence of a signed writing by the party to be sanctioned or compliance with the safe harbor provision of Rule 9011. *See*, *Fellheimer,* 57 F.3d at 1228; 730 F.3d 198, 206 (3d Cir. 2013).

56.    To impose sanctions under a Court's inherent power, a Court must find that the party against whom sanctions are to be imposed acted in bad faith. *See*, *Chambers,* 501 U.S. at

45–46, 111 S.Ct. 2123; *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions,* 278 F.3d 175, 181 (3d Cir.2002); *In re Theokary,* 468 B.R. 729, 748 (Bankr. E.D. Pa. 2012); *Miller,* 529 B.R. at 91.

57.     The party to be sanctioned must also be afforded due process, including notice of "the legal basis for the sanctions." *See, Theokary*, 469 B.R. at 748. However, notice of the "precise sanctioning tool" is not required, as "[n]otice is sufficient if the responding party is aware that he or she is being charged with bad faith conduct and needs to confront this charge to defend against the imposition of sanctions." *See, Id.*

58.     Here, the Respondents were on notice as of November 15, 2020 when Jim's Objection was filed that Jim was asserting that the Debtor filed its bankruptcy case without the requisite corporate authority and in bad faith. The Motion to Dismiss filed on November 23, 2020 provided additional facts, legal basis and support for the allegations initially set forth in Jim's Objection.

59.     As set forth above, at the hearing held on November 24, 2020, the Court specifically asked Winterhalter to investigate the allegations set forth in Jim's Objection and the Motion to Dismiss and that the case be voluntarily dismissed prior to the hearing on the Motion to Dismiss if the case was not filed with the requisite corporate authority.

60.     The Court correctly found that the bankruptcy case was filed without the requisite corporate authority.

61.     The Court also correctly found that the bankruptcy case was filed in bad faith. By defending the bankruptcy filing and moving forward with their bad faith effort to stall the District Court Litigation, the Respondents acted vexatiously, wantonly and for oppressive reasons.

62.     Accordingly, the Court should sanction them under its inherent power to sanction litigants who appear before it.

## III. Sanctions are Warranted against the Respondents, Jointly and Severally, Under Bankruptcy Rule 9011.

### (1)     Bankruptcy Rule 9011.

63.     Bankruptcy Rule 9011 is the bankruptcy analogue of Rule 11 of the Federal Rules of Civil Procedure. *See, Cinema Serv. Corp. v. Edbee Corp.*, 774 F.2d 584, 585 (3d Cir. 1985) ("The text of the Rule tracks Fed. R. Civ. P. 11, with only such modifications as are appropriate in bankruptcy matters.").

64.     Bankruptcy Rule 9011(b) provides that:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, --
>
> (1)     it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2)     the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3)     the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4)     the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

*See*, Fed. R. Bankr. P. 9011(b).

65.    Rule 9011(b) requires that parties making representations to the court certify that "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support." *See*, Fed. R. Bankr.P. 9011(b)(3).

66.    A party must reach this conclusion based on "inquiry reasonable under the circumstances." *See*, Fed. R. Bankr.P. 9011(b).

67.    "The concern of Rule 9011 is not the truth or falsity of the representation in itself, but rather whether the party making the representation reasonably believed it at the time to have evidentiary support." *See*, *Miller*, 529 B.R. at 90.

68.    In determining whether a party has violated Rule 9011, the Court need not find that a party who makes a false representation to the court acted in bad faith. *See*, *Id.*, at 90; *In re Taylor*, 655 F.3d 274, 282 (3d Cir.2011).

69.    Rather, "[t]he imposition of Rule 11 sanctions ... requires only a showing of objectively unreasonable conduct." *See*, *Fellheimer,* 57 F.3d at 1225.

70.    Rule 9011(b) also requires that parties who present a petition, pleading, motion, or any other paper to the court certify that "it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." *See*, Fed. R. Bankr.P. 9011(b)(1). *See also*, *In re Kouterick*, 167 B.R. 353, 365–66 (Bankr. D.N.J. 1994).

71.    "The obligations imposed by F.R.B.P. 9011(b) expressly extend to 'later advocating' a 'position after learning that the position no longer has merit'." *See*, *Coquico,* 508 B.R. at 940 (*quoting Theokary*, 468 B.R. at 746 (Bankr. E.D. Pa. 2012).

72.    When a court finds that a violation of Rule 9011 occurred, sanctions are mandatory. *See*, *Bailey,* 321 B.R. at 183.

73.     Under Bankruptcy Rule 9011(c), if a court determines that a violation of Rule 9011(b) has occurred, the court "may . . . impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." *See*, Fed. R. Bankr. P. 9011(c).

74.     Represented parties may be sanctioned under Bankruptcy Rule 9011(c) provided "they are found to be the person responsible for a false certification." *See*, *In re Wall*, No. 16-00763, 2019 WL 522545, at *4 (Bankr. N.D. Iowa Feb. 8, 2019) (citing Fed. R. Civ. P. advisory committee note). *See also*, Fed. Bankr. P. 9011(c)(2)(A) (precluding the imposition of monetary sanctions against a represented party for a violation subsection (b)(2), but not (b)(1), (b)(2) or (b)(3)); *In re Collins*, 250 B.R. 645, 660-61 (N.D. Ill. 2000) (holding that the provisions of Rule 9011 apply to a represented party).

75.     Bankruptcy Rule 9011(c) also details the procedure that must be followed before sanctions can be imposed.

76.     In most cases, the moving party must provide the party to be sanctioned with 21 days to withdraw or correct the challenged submission. *See*, Fed. R. Bankr. P. 9011(c)(1)(A).

77.     However, this safe harbor provision does not apply if the challenged filing is a petition. *See*, *Id.* (". . . except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b)"). *See also*, *Schemelia*, 607 B.R. at 460 ("Thus, pursuant to Rule 9011(c), no safe harbor letter need be sent if a party seeks sanctions for the filing of a petition.").

**(2)** **The Respondents Violated Bankruptcy Rule 9011(b) by Filing a Petition Based on False Claims.**

78.    This Court has already found that the Debtor's bankruptcy proceeding was filed in bad faith to, *inter alia*, gain a tactical advantage in the District Court Litigation which constitutes a violation of Bankruptcy Rule 9011(b)(1).

79.    In addition, this Court has already found that Jack lied about the alleged shareholders meeting and the alleged directors meeting which constitutes a violation of Bankruptcy Rule 9011(b)(3).

80.    The evidence in this case also reflect that Offit and Winterhalter were aware that (i) no proper notice of a meeting of directors was issued, (ii) no proper notice of a meeting of shareholders  was issued, (iii) no meeting of directors was held, (iv) no meeting of shareholders was held, and (v) no vote was ever taken to authorize the filing of the Debtor's bankruptcy case which constitute violations of Bankruptcy Rule 9011(b)(1), (2), and (3).

81.    The improper filing of the bankruptcy proceeding had the desired effect.  The District Court Litigation was completely stayed as to all of the defendants and Jim was forced to incur significant fees and costs in order to have the Debtor's bankruptcy case dismissed.

## IV.    Sanctions are Warranted against Offit and Winterhalter, Jointly and Severally, Under 28 U.S.C. § 1927.

82.    Section 1927 provides that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *See*, 28 U.S.C. § 1927.

83.    The Third Circuit has held that bankruptcy courts have the power to impose sanctions against an attorney under Section 1927. *See*, *In re Schaefer Salt Recovery, Inc.*, 542 F.3d

90, 105 (3d Cir.2008) (although a bankruptcy court is not a court of the United States, it is a unit

of the district court and therefore has the authority to impose sanctions under Section 1927). *See*

*also*, *Miller*, 529 B.R. at 92; *In re Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 230 (2d Cir.1991)

(concluding without discussion that a "bankruptcy court may impose sanctions pursuant to 28

U.S.C. § 1927").

84.    Section 1927 only authorizes sanctions against attorneys, not their clients. *See*,

*Loftus v. Southeastern Pennsylvania Transp. Auth.*, 8 F.Supp.2d 458, 461 (E.D.Pa.1998); *Coquico*,

508 B.R. at 941.

85.    To sanction an attorney under Section 1927, a Court must find that an attorney has

" '(1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing

the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct.' " *See*,

*Schaefer Salt*, 542 F.3d at 101 (*quoting Prudential Ins. Co.*, 278 F.3d at 188. *See also*, *Miller*, 529

B.R. at 92; *Hackman v. Valley Fair*, 932 F.2d 239, 242 (3d Cir.1991); *In re Argus Grp.1700, Inc.*,

Civil Action Nos. 96–8011, 96–8244 and 96–8618, 1997 WL 87623, at *2 (E.D.Pa. Feb. 20, 1997).

86.    The Third Circuit has held that the "intentional advancement of a baseless

contention that is made for an ulterior purpose, e.g., harassment or delay" may be indicative of bad

faith. *See*, *Ford v. Temple Hospital*, 790 F.2d 342, 347 (3d Cir.1986).

87.    Bad faith can be implied when a claim is advocated despite the fact that it is

frivolous. *See*, *Miller*, 529 B.R. at 92. *See also*, *Hicks v. Arthur*, 891 F.Supp. 213 (E.D. Pa. 1995).

88.    Offit and Winterhalter clearly knew that there was no bankruptcy purpose to file the

Debtor's bankruptcy case.

89.    In addition, they clearly knew that no vote was ever taken for authorization to

commence the bankruptcy case. As set forth herein, this Court even warned Winterhalter at the

hearing on the Debtor's Expedited Hearing Request to make certain that there was valid corporate authority for the bankruptcy filing yet he failed to do so. *See*, Exhibit "A", at pgs. 19-20.

## V.    Jim is Entitled to his Attorneys' Fees and Costs.

90.    In light of the circumstances under which Jim was forced to seek dismissal of the Debtor's bankruptcy case, Jim is entitled to be reimbursed for the attorneys' fees and costs reasonably incurred because of the Respondents' conduct. *See*, Fed. R. Bankr. P. 9011(c)(1)(B) (where sanctions are "imposed on motion and warranted for effective deterrence," they may consist of "an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation."); *In re NNN 400 Capital Center 16, LLC*, No. 18-50384, 2019 WL 5073844, at *2 (Bankr. D. Del. Oct. 9, 2019) (holding that Section 105(a) "includes the authority to impose sanctions, including an award of attorney's fees, if a party violates a court order or rule") (citing *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 105 (3rd Cir. 2008)). Sanctions are also clearly required under 28 U.S.C. § 1927 against Offit and Winterhalter. *See*, *Miller*, 529 B.R. at 92.

91.    This Court has found that the Debtor's bankruptcy case was filed without the requisite corporate authority and filed in bad faith.

92.    The Respondents were on notice as early as November 15, 2020 of these issues but they (i) failed to dismiss the bankruptcy case, or (ii) consent to the relief requested in the Motion to Dismiss. Instead, they continued to defend their improper actions thereby exacerbating the fees and costs incurred by Jim to prosecute the Motion to Dismiss.

93.    Jim's reasonable attorneys' fees and costs are an appropriate measure of sanctions for such misconduct. *See, e.g.*, *In re Law Center*, 261 B.R. 607, 610-13 (Bankr. M.D. Pa. 2001) (holding that filing of an involuntary petition against a partnership by one of the partners

where the only debt alleged was clearly the subject of a bona fide dispute was objectively unreasonable conduct, warranting the award of Rule 9011 sanctions, including attorneys' fees and costs); *In re Klitsch*, 587 B.R. 287, 295-96 (Bankr. M.D. Pa. 2018) (finding that, where bankruptcy petitions were improperly filed, "the minimum sanction needed to deter future violations is the imposition of Movant's attorneys' fees").

94.    It is important to note that Offit is liable for the conduct, acts and omissions of Winterhalter. *See, e.g.*, *Enmon v. Prospect Capital Corp.*, 675 F.3d 138 (2d Cir. 2012); *Lee v. First Lenders Ins. Servs., Inc.*, 236 F.3d 443 (8th Cir. 2001); *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899 (D.C. Cir. 1998); *Avirgan v. Hull*, 932 F.2d 1572 (11th Cir. 1991); *Baker Indus., Inc. v. Cerberus Ltd.*, 764 F.2d 204 (3d Cir. 1985). *See also*, Fed. R. Bankr. P. 9011. It is appropriate for a law firm to be jointly responsible for its employees' conduct under "established principles of agency." *See*, Fed. R. Civ. P. 11 advisory committee's note to 1993 amendments.

95.    The attorney's fees and costs incurred by Jim as a result of the bankruptcy case being filed are as follows:

   (a)    Karalis PC ("KPC") - Attorneys' fees of $111,782.50 and costs of $3,041.11 and

   (b)    Sidkoff Pincus & Green P.C. ("SPG") - Attorneys' fees of $104,185.00.

   (c)    The Declarations of Aris J. Karalis, Esquire, on behalf of KPC, and Gary Green, Esquire, on behalf of SPG, in Support of the Motion are attached hereto as Exhibits "C" and "D", respectively, and made a part hereof.

96.    Jim respectfully requests the entry of a judgment, jointly and severally, against Offit, Winterhalter, and Jack for attorneys' fees in the amount of $215,967.50 and costs in the amount of $3,041.11 set forth above for a total judgment in the amount of $219,008.61.

97.     Jim also requests that any Judgment Order entered by this Court also provide a provision that allows Jim to be able to file a supplementary pleading with this Court to request an increase of the amount of any judgment entered against the Respondents by the amount of the additional attorneys' fees and costs incurred by Jim, if applicable, (a) to affirm any said judgment order on appeal, and (b) to collect any said judgment order against the Respondents.

**WHEREFORE**, Jim respectfully requests the entry of a Judgment Order against the Respondents granting (a) the Motion, and (b) such other and further relief as this Court deems just and proper.

                                        **Respectfully submitted,**

                                        **KARALIS PC**

                                        By:____/s/ Aris J. Karalis_____
                                              ARIS J. KARALIS
                                              ROBERT W. SEITZER
                                              1900 Spruce Street
                                              Philadelphia, PA 19103
                                              (215) 546-4500
                                              akaralis@karalislaw.com
                                              rseitzer@karalislaw.com

                                        *Attorneys for James E. Meyer*

Dated: January 14, 2021